**Thomas E. McCARTEY,**
**Plaintiff–Appellant,**

v.

**Larry G. MASSANARI, Acting Commissioner of Social Security Administration, Defendant–Appellee.**

**No. 01–17225.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 10, 2002.

Filed Aug. 6, 2002.

Eugenie Denise Mitchell (argued), Bess M. Brewer, Brewer & Mitchell, LLP, Sacramento, CA, for the plaintiff-appellant.

Jacqueline A. Forslund, Assistant Regional Counsel, United States Social Security Administration, San Francisco, CA, for the defendant-appellee.

Before SCHROEDER, Chief Judge, D.W. NELSON and REINHARDT, Circuit Judges.

## OPINION

REINHARDT, Circuit Judge.

Thomas E. McCartey appeals from a district court judgment affirming the Commissioner's decision to deny him Social Security Disability ("SSD") benefits. One of the grounds urged by McCartey for reversal of the Commissioner's decision is that the ALJ erred in rejecting his SSD application without considering the finding of the Department of Veterans Affairs ("VA") that McCartey was unable to work due to disability. We agree and therefore reverse and remand.[1]

## I

McCartey's disability stems from a workplace accident in 1987, in which a 100 pound door fell on him and injured his lower back. Although McCartey returned to work after the accident, by 1991 his lower back pain had grown so intense that he could no longer work. Around that time, McCartey's previously extant depression worsened considerably, and he began to suffer from a host of other ailments.[2] On June 3, 1997, the VA granted McCartey a nonservice-connected pension after finding that he was "unable to secure and follow a substantially gainful occupation" due to disability. The VA gave McCartey a total disability rating of 80%, based primarily on his depression and secondarily on his lower back injury.

At his hearing, McCartey described his disability as: "Depression, then my disk disease and joint disease and arthritis." VA medical records document that McCartey has had a history of depression since 1973, with symptoms worsening significantly in 1990. In late 1992, McCartey suffered a prolonged depressive episode in which he locked himself in his house for over a year. He left his home only to visit the doctor and tried to starve himself to death. McCartey began treatment for depression, including medication and counseling, in 1994. He continues to receive treatment today.[3]

Medical records reveal the debilitating effect of depression on McCartey's ability

---

1. Because we reverse on this ground, we do not reach the other grounds asserted by McCartey.

2. These include: hypogonadism, hypertension and hyperlipidemia, anxiety and mood swings, irritable bowel syndrome and atypical chest pain, an enlarged prostate, night sweats, and fatigue.

3. Although McCartey has experienced brief, symptom-free periods, he has consistently needed psychiatric treatment, including medication and therapy.

to work. According to the VA rating criteria, McCartey's depression compromises his ability to function independently, appropriately, and effectively, to adapt to stressful circumstances including a work setting, and to establish and maintain effective relationships. Medical records note that McCartey has poor concentration and sometimes hears voices. He seldom sleeps more than two hours a night, so he has to rest during the day. He also experiences debilitating anxiety attacks.[4]

McCartey's depression is complicated by the significant functional limitations caused by his back injury and other impairments. McCartey testified that because of his back problems he cannot lift more than ten pounds and must alternate sitting and standing.[5] In addition, McCartey suffers from night sweats, which occur several times a week and significantly amplify the pain and stiffness in his joints. During the day, McCartey's main activity is pain management, which consists of alternating stretching and walking with periods of rest. Another main activity is taking medications and going to the doctor. McCartey performs limited activities of daily living, but even basic tasks like dressing or making breakfast take him a long time. Every household task must be executed slowly and carefully. McCartey cannot perform strenuous or complicated household chores. His sister drives him to the grocery store and helps him select and carry items. Overall, it is clear from the record that although McCartey is able to function minimally on a day-to-day basis, he is incapable of performing work on a sustained and continuing basis.

In a decision dated September 15, 1998, the ALJ performed a sequential evaluation analysis and found that McCartey was not disabled.[6] At Step Two, the ALJ relied on the maximum work McCartey could perform given his limitations.

---

4. McCartey's sister offered a similar account of McCartey's mental health. She stated: "He has bouts of depression. His energy level is much lower and he has stress and anxiety attacks. He stays home a lot and has to rest often. His illness and pain has [sic] caused major physical and mental changes in his life. He hasn't been able to work for years."

5. McCartey's testimony is supported by the opinion of Dr. Mark Johnson, who treated McCartey for his back injury in 1991 and 1992. At that time, Dr. Johnson prohibited McCartey from working at all, but stated that he thought McCartey might eventually be able to return to part-time work with these restrictions, if the work took place in a low stress environment. Dr. Johnson stopped treating McCartey in 1992 because McCartey's health insurance expired. Thereafter, McCartey received medical treatment for his back at the VA clinic. Although McCartey did not submit an opinion from his treating physician at the VA clinic, he did present a series of x-rays and MRIs that showed continuing deterioration of his back from 1991 to 1997. In addition, McCartey's mental health grew worse after 1992. Therefore, Dr. Johnson's opinion, even though it dates from 1992, still best describes

6. The Commissioner follows a five-step sequential evaluation process in assessing whether a claimant is disabled.

*Step one:* Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
*Step two:* Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
*Step three:* Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
*Step four:* Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
*Step five:* Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled. 20 C.F.R. § 404.1520.

the reports of SSA's consultative physicians to determine that McCartey's depression was "only a slight abnormality." The ALJ then disregarded McCartey's depression for the balance of his opinion. At Step 5, the ALJ relied on the testimony of a Vocational Expert to determine that there were still jobs in the national economy that McCartey could perform. In evaluating McCartey's residual functional capacity, the ALJ focused exclusively on McCartey's back injury and did not mention his depression. The ALJ's opinion contains no reference to the VA disability rating.

McCartey appealed, submitting new medical records from the VA clinic that documented his history of depression. On June 23, 2000, the Appeals Council denied the request for review, and the ALJ's decision became the final decision of the Commissioner. The Appeals Council held that the VA records documenting McCartey's history of depression were not material because they were dated after the Administrative Law Judge's decision.

McCartey sought review of the ALJ's decision in district court. The magistrate judge recommended denying the petition for review. His opinion does not mention McCartey's depression. The district judge adopted the findings of the magistrate judge and denied the petition for review.

## II

■ We review *de novo* a district court's order upholding a denial of social security disability benefits. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir.1998). We may set aside the findings of the ALJ if they are based on legal error or are not supported by substantial evidence. *Smolen v. Chater*, 80 F.3d 1273 (9th Cir.1996). If the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm. *Reddick*, 157 F.3d at 720.

■ The issue of the evidentiary significance of a VA disability rating is a matter of first impression in this circuit. However, the nine circuits that have considered this issue agree that a VA disability rating is entitled to evidentiary weight in a Social Security hearing. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir.2001) (per curiam) (VA disability rating is generally entitled to "great weight" and "must be considered by the ALJ"); *Morrison v. Apfel*, 146 F.3d 625, 628 (8th Cir.1998) ("[F]indings of disability by other federal agencies ... are entitled to some weight and must be considered in the ALJ's decision"); *Baca v. Dept. of Health and Hum. Svcs.*, 5 F.3d 476, 480 (10th Cir.1993) ("Although findings by other agencies are not binding on the Secretary, they are entitled to weight and must be considered."); *Davel v. Sullivan*, 902 F.2d 559, 560 n. 1 (7th Cir.1990) (VA's decision is "entitled to some weight" and should be considered by ALJ); *Kane v. Heckler*, 776 F.2d 1130, 1135 (3d Cir.1985) (VA rating entitled to "substantial weight"); *Stewart v. Heckler*, 730 F.2d 1065, 1068 (6th Cir.1984) (VA rating entitled to ALJ consideration); *Brady v. Heckler*, 724 F.2d 914, 921 (11th Cir.1984) (per curiam) (VA rating entitled to"great weight"); *DeLoatche v. Heckler*, 715 F.2d 148, 150 n. 1 (4th Cir.1983) (same); *Hankerson v. Harris*, 636 F.2d 893, 897 (2d Cir.1980) (VA rating entitled to "some weight"); *Fowler v. Califano*, 596 F.2d 600, 603 (3d Cir.1979) (same). No circuit has held that an ALJ is free to disregard a VA disability rating.

The government argues that in this circuit, unlike the others, an ALJ has no duty to consider medical opinions prepared for other benefit programs. It cites *Desrosiers v. Sec'y of Health and Hum. Svcs.*, 846 F.2d 573, 576 (9th Cir.1988), for this proposition. In *Desrosiers*, two doctors evaluated the claimant for the purposes of his California workers' compensation claim

and determined that the claimant could no longer perform heavy work. *Id.* Because California workers' compensation rules did not require them to do so, the doctors did not opine on whether the claimant could perform other work. *Id.* The court held that the ALJ erred in relying on the doctors' reports to conclude that the claimant could still perform less than heavy work. *Id. Desrosiers* is not pertinent to the question of how much weight, if any, an ALJ should give to another federal agency's finding of disability.

We agree with all of the other circuits that have considered the question and hold that although a VA rating of disability does not necessarily compel the SSA to reach an identical result, 20 C.F.R. § 404.1504, the ALJ must consider the VA's finding in reaching his decision. The important question here is how much weight an ALJ must give the VA determination. The circuits have employed differing standards. *Compare, e.g., Kane,* 776 F.2d at 1135 ("substantial weight") *with Brady,* 724 F.2d at 921 ("great weight") *and Hankerson,* 636 F.2d at 897 ("some weight").

We agree with the approach of the Fourth, Fifth, and Eleventh Circuits and hold that in an SSD case an ALJ must ordinarily give great weight to a VA determination of disability. *See Chambliss,* 269 F.3d at 522, *Brady,* 724 F.2d at 921; *De-Loatche,* 715 F.2d at 150 n. 1. We so conclude because of the marked similarity between these two federal disability programs. Both programs serve the same governmental purpose—providing benefits to those unable to work because of a serious disability. Both programs evaluate a claimant's ability to perform full-time work in the national economy on a sustained and continuing basis; both focus on analyzing a claimant's functional limitations; and both require claimants to present extensive medical documentation in support of their claims. *Compare* 38 C.F.R. § 4.1 et seq. (VA ratings) *with* 20 C.F.R. § 404.1 et seq (Social Security Disability). Both programs have a detailed regulatory scheme that promotes consistency in adjudication of claims. Both are administered by the federal government, and they share a common incentive to weed out meritless claims. The VA criteria for evaluating disability are very specific and translate easily into SSA's disability framework. Because the VA and SSA criteria for determining disability are not identical, however, the ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record. *See Chambliss,* 269 F.3d at 522 (ALJ need not give great weight to a VA rating if he "adequately explain[s] the valid reasons for not doing so").

### III

In this case, the VA determined that McCartey was 80% disabled due to his depression and lower back injury. The ALJ failed to consider the VA finding and did not mention it in his opinion. We hold that the ALJ erred in disregarding McCartey's VA disability rating, and accordingly, the Commissioner's decision must be reversed and remanded.

We have discretion to remand a case either for additional evidence and findings or for an award of benefits. *Smolen v. Chater,* 80 F.3d 1273, 1292 (9th Cir.1996). We may direct an award of benefits if the record has been fully developed and further administrative proceedings would serve no useful purpose. *Id.* Such a circumstance arises when: (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is

clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence. *Id.,* citing *Rodriguez v. Bowen,* 876 F.2d 759, 763 (9th Cir.1989) (crediting treating physician's testimony and awarding benefits); *Swenson v. Sullivan,* 876 F.2d 683, 689 (9th Cir.1989) (crediting subjective symptom testimony and awarding benefits); *see also Lester v. Chater,* 81 F.3d 821, 834 (9th Cir.1995) (same); *Stewart v. Heckler,* 730 F.2d 1065, 1068 (6th Cir.1984) (crediting VA finding of disability and awarding benefits). In this case, the VA's disability finding was supported by several hundred pages of medical records.[7] The record is fully developed and, giving great weight to the VA disability rating, a finding of disability is clearly required. *See Smolen,* 80 F.3d at 1292. Therefore, we hold that McCartey was disabled throughout the relevant period, and we reverse and remand to the district court with instructions to remand to the ALJ for payment of benefits.

REVERSED and REMANDED.

7. The Appeals Council erred in its determination that the medical records dated after September 15, 1998 were immaterial because they documented medical treatment that occurred after the ALJ's decision. The treatment notes contained in these records record

McCartey's history of depression since the early 1990s. This history is material and probative of the fact that McCartey was disabled prior to his date last insured, December 31, 1997.